Case 4:22-cv-00986 Document 21 Filed on 08/16/23 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
August 16, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JULIE L.,[1] | § |
| *Plaintiff,* | § § § § |
| v. | No. 4:22-cv-986 § § |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | § § § § § |
| *Defendant.* | § § |

# MEMORANDUM AND ORDER

Plaintiff Julie L. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 18;

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On June 23, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Def.'s Consent, ECF No. 8; Pl.'s Consent, ECF No. 9; Order Transferring, ECF No. 10.

1

Def.'s MSJ, ECF No. 19. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the ALJ erred in her Residual Functional Capacity ("RFC") assessment because she did not include all of Plaintiff's limitations. ECF No. 18. Commissioner counters that the ALJ "properly determined Plaintiff's RFC for the relevant period" through the date she was last insured for Title II benefits. ECF No. 19. Based on the briefing, the record, and the applicable law, the Court determines that substantial evidence supports the ALJ's determination. Therefore, Plaintiff's motion for summary judgment should be denied and Commissioner's motion for summary judgment should be granted.

I.  BACKGROUND

Plaintiff is 57 years old, R. 41, 74, 190, 211,[3] and completed some high school. R. 41, 216, 287–89. Plaintiff worked as a baker, customer service representative, office aid, and operations manager. R. 42–46, 216, 226–32. Plaintiff alleges a disability onset date of May 31, 2014. R. 74, 190, 211. Plaintiff claims she suffers physical and mental impairments. R. 74, 218.

On November 12, 2019, Plaintiff filed her application for disability insurance benefits under Title II of the Act. R. 17, 190–93. Plaintiff based[4] her application on

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 7.

[4] The relevant time period is May 31, 2014—Plaintiff's alleged onset date—through September 30, 2018—Plaintiff's last insured date. R. 19. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant

2

Crohn's disease, Hepatitis B, degenerative disc disease, and arthritis. R. 74, 215. The Commissioner denied her claim initially, R. 74–81, and on reconsideration, R. 82–92.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 34. Plaintiff, Plaintiff's husband, and a vocational expert ("VE") testified at the hearing. R. 41, 57, 64. The ALJ issued a decision denying Plaintiff's request for benefits. R. 14–33.[5] The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–6. Plaintiff appealed the Commissioner's ruling to this court. ECF No. 1.

---

time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 27–28. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 19 (citing 20 C.F.R. 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease and Crohn's disease. R. 19–21 (citing 20 C.F.R. 404.1520 (c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 21 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b). R. 21. However, the ALJ added limitations, including that Plaintiff was able to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently, stand or walk four hours out of an eight-hour workday and sit six hours out of an eight-hour workday, climb stairs, ramps, ladders, ropes, or scaffolds occasionally, and balance, stoop, kneel, crouch, or crawl occasionally. R. 21–26. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 26. At step five, based on the testimony of the VE and a review of the report, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff acquired work skills from past relevant work that were transferable to other occupations in the national economy, including mail sorter, procurement clerk, and order clerk. R. 27–28. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 28.

## II. STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d at 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*,

4

787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

### III. THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

5

mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

IV. **COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.**

Plaintiff raises one issue. Plaintiff argues that although the ALJ found her degenerative disc disease to be a severe impairment at step two, the ALJ did not

incorporate any cervical limitations in her RFC decision, which was in direct conflict with the opinion of Dr. Robert Johnston, Plaintiff's treating physician. ECF No. 18 at 10–14. Plaintiff contends that had the ALJ properly limited Plaintiff's RFC based on her cervical impairment and found the opinion of Dr. Johnston to be persuasive, then the ALJ would have found Plaintiff to be disabled. *Id.* at 13.

Commissioner counters that Plaintiff asks this Court to reweigh the evidence, which is reserved solely for the ALJ. ECF No. 20 at 12. Commissioner argues that substantial evidence supported the ALJ's decision that Plaintiff had the RFC to perform a light range of work because the decision was based on the record's relevant evidence. *Id.* at 7–8, 12. Commissioner also contends that the ALJ properly discounted Dr. Johnston's opinion on Plaintiff's cervical limitation because his opinion was inconsistent with his treating notes and other objective evidence in the record. *Id.* at 9.

The Court finds that when formulating her RFC determination, the ALJ properly considered Plaintiff's limitations based on the medical record and appropriately evaluated Dr. Johnston's opinion, and therefore substantial evidence supports her decision.

A.  **The ALJ Properly Assessed Plaintiff's RFC.**[6]

Between the third and fourth steps of the sequential analysis, the ALJ must

---

[6] Plaintiff briefly complains that the ALJ did not include all Plaintiff's severe impairments in her

7

determine the claimant's RFC, which is defined as the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). "In formulating the RFC, the ALJ must consider all impairments, whether severe or non-severe." *Franklin v. Berryhill*, No. 4:16-CV-1106, 2017 WL 3620347, at *9 (S.D. Tex. Aug. 23, 2017) (citing *Patterson v. Berryhill,* No. 3:16–CV–204, 2017 WL 1196859, at *12 (N.D. Tex. Mar. 30, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Id.*; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the

---

decision. ECF No. 18 at 7, 10. Plaintiff does not explain whether this is Step Two failure and why, how these additional impairments rose to the level of being severe, or what limitations were caused by these additional severe impairments that were presumably unaddressed by the ALJ's RFC finding. Because Plaintiff does not support this conclusory argument, it is waived. *See ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, No. 4:22-CV-01914, 2023 WL 2719446, at *5, n. 4 (S.D. Tex. Mar. 30, 2023) (citing *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (argument waived for inadequate briefing when a party fails to identify the relevant legal standards or merely mentions or alludes to a legal theory)).

appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

The Fifth Circuit has held that the RFC assessment is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (remanding when ALJ failed to address every function of sedentary work). The ALJ must discuss the evidence and explain why he did or did not find Plaintiff to be disabled. 42 U.S.C. § 405(b)(1). However, the regulations do not require the ALJ to include "an exhaustive point-by-point discussion." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that an ALJ must offer some explanation to support her conclusion but not an exhaustive list); *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("[T]hat the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record.").

Here, the ALJ determined "[a]fter careful consideration of the entire record," that "through the date last insured, [Plaintiff] had the [RFC] to perform a range of light work," and she "was able to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently," "stand or walk four hours out of an eight-hour workday," and "sit six hours out of an eight-hour workday," "climb stairs, ramps, ladders, ropes, or scaffolds occasionally," and "balance, stoop, kneel, crouch, or crawl

occasionally." R. 21. In formulating Plaintiff's RFC, the ALJ appropriately considered the limitations of Plaintiff's impairments, including her degenerative disc disease, bearing in mind the objective medical evidence, Plaintiff's testimony, Plaintiff's husband's testimony, and the medical opinions. R. 21–26.

### 1. *Plaintiff's medical history demonstrates cervical improvement.*

The ALJ carefully walked through Plaintiff's medical history during the relevant time period. The ALJ noted that in July 2016, Plaintiff's primary care physician, Dr. Johnston, prescribed pain medication and muscle relaxants for back and neck pain while also treating Plaintiff for opioid dependence. R. 23, 425–37. In November 2016, Plaintiff denied musculoskeletal pain, and on examination, was "noted as having a stable gait with normal extremities usage," and "normal strength." R. 23, 322, 468–69. In December 2016, Plaintiff's medication for pain and muscle relaxants were refilled. R. 23, 402–03. In February 2017, Plaintiff again denied musculoskeletal pain, examination of her neck, gait, and station were normal. R. 23–24, 313–14. In August 2017, Plaintiff "reported that she was having persistent neck pain, which radiated down her arms," and upon examination, "she evidenced weakness in the right hand with atrophy of the right triceps." R. 24, 371–73, 387, 508. "A cervical MRI showed degenerative disc disease at C5-C7 with spondylosis, stenosis, and spinal cord compression," and so, Plaintiff "underwent fusion surgery." R. 24, 367–69, 379–81, 508, 575.

Months later in November 2017, Plaintiff "reported she was doing much better with resolution of her neck pain." R. 24, 359, 365. In December 2017, Plaintiff "indicated she was having pain and muscle spasms between the shoulder blades and down the arms to the elbows," but she also reported improvement in her strength. R. 24, 363. Cervical x-rays taken at this time showed the fusion "to be in good position." R. 24, 375, 568, 571. In March 2018, a cervical MRI "showed spacious canal with no new lesions," and "[t]he soft tissues of the neck were also unremarkable for pathology." R. 24, 305, 360–62, 377. In July 2018, "cervical x-rays showed intact hardware and normal alignment with no abnormalities." R. 24, 565–67.[7] Thus, the ALJ considered Plaintiff's medical history and noted both improvements and complaints of pain, including her post-neck surgical reports, which trended toward improvement.

### 2. Testimony regarding the severity of Plaintiff's symptoms was unsupported by objective evidence.

The ALJ expressly noted that Plaintiff "stated that she had cervical spine problems, which caused limitation in the use of her hands," and that Plaintiff revealed at the hearing that "she underwent neck surgery, but continued to have

---

[7] Plaintiff argues that "even if her symptoms and impairments were completely alleviated with at the time of her surgical fusion, Plaintiff still had more severe impairments than those recognized in the ALJ's decision." ECF No. 18 at 10. As previously noted, Plaintiff does not clarify what these severe impairments were and how the ALJ's RFC finding did not encompass their limitations and therefore waived any error. *See ADR Int'l Ltd.*, 2023 WL 2719446, at *5, n. 4.

trouble with her neck." R. 22, 50–52. The ALJ also noted that Plaintiff's husband testified that Plaintiff experienced neck pain in 2016, and during that time, "she was unable to vacuum or lift heavy objects." Plaintiff's husband stated that she "had difficulty turning her neck and using her hands." R. 22, 58, 61–63.

Regarding Plaintiff and her husband's testimony, the ALJ found "after careful consideration of the evidence," their statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 23. The ALJ explained these inconsistencies and her RFC determination:

> In limiting [Plaintiff] to sedentary[8] exertion, the [ALJ] considered [Plaintiff's] subjective complaints of pain, which are partially supported by the radiological evidence cited above. However, the [ALJ] notes that [Plaintiff] consistently had normal gait with no evidence of requirement for ambulation. Her . . . degenerative disc disease [was] largely controlled following surgery.

R. 24–25. Plaintiff complains that this comment suggests that the ALJ was only considering her lumbar degenerative disc disease and not her cervical degenerative disc disease. ECF No. 18 at 12. While gait and ambulation do tend to refer to lumbar as opposed to cervical disc issues, the preceding references are to her neck pain and

---

[8] Here the ALJ used sedentary exertion but used light exertion everywhere else in the opinion. Where the ALJ's intent is apparent, an error or contradiction in a decision may be excused as a scrivener's error. *Galvan v. Berryhill*, No. 4:15-CV-3718, 2018 WL 993882, at *3 n.3 (S.D. Tex. Feb. 21, 2018) (citing *Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015)). Based on the entirety of the ALJ's decision, the Court finds that this should instead read "light exertion." *See id.*

neck issues. Significantly, the ALJ noted that, in March 2018, Plaintiff reported "she was looking for work," "the cervical MRI showed spacious canal with no new lesions," and the "soft tissues of the neck were unremarkable for pathology." R. 24. Plaintiff's post-surgery treatment notes indicate a marked improvement in her neck pain. R. 305, 359, 360–63, 365–67, 375, 377, 568, 571. Thus, it cannot be said that the ALJ did not consider her post-surgery neck recovery and the severity of her symptoms.

### 3. *The ALJ properly considered the medical opinions of record.*

Under the new rule regarding RFC determinations, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a).[9] Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization, and (5) other factors. 20 C.F.R.

---

[9] For claims filed after March 27, 2017, the new guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations). Because Plaintiff's claim was filed on November 12, 2019, this new rule applies.

§ 404.1520c(b).[10] The most important factors are consistency and supportability. *Id.; Garcia*, 2020 WL 7417380, at *4. Under the new guidelines, the ALJ must articulate how persuasive she finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b). Here, the ALJ addressed each of the medical opinions, explaining her reasoning for finding each opinion persuasive or not. R. 25–26.

The ALJ considered Dr. Johnston's opinion that Plaintiff's impairments "were severe enough to constantly interfere with attention and concentration," and she would be able to "sit, stand/walk for less than 2 hours total in an eight hour workday," and "would require the ability to shift positions at will and take unscheduled work breaks of 6-8 times a day, for 1 hour in duration." R. 25; *see* R. 1900–04. Dr. Johnston also opined that Plaintiff "would never be able to look down or look up," and "occasionally turn her head right or left and hold her head in a static position." R. 25; *see* R. 1903. Dr. Johnston is a family practitioner who has seen Plaintiff since July 2016. R. 1900, 1906–07.

The ALJ methodically explained her disagreement with Dr. Johnston's opinions. R. 25. Citing to the record for support, she stated that his opinions were "inconsistent with his own treating records and the objective evidence during the relevant time period." R. 25. Specifically, the ALJ noted that Dr. Johnston

---

[10] Other factors include evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. 20 C.F.R. § 404.1520c(b).

"prescribed [Plaintiff] pain medication and muscle relaxants based solely on her subjective complaints," despite simultaneously treating her for opioid dependence, and there were no "physical examination[s] done during these visits showing any objective limitations." R. 25–26; *see* R. 387–90, 392. Then in August 2017, after Dr. Johnston stopped treating Plaintiff, she had fusion surgery, which she reported as successful in alleviating her neck pain. R. 26. The ALJ also notes that the providers who treated Plaintiff following the surgery all "noted [Plaintiff's] resolution of her [cervical] pain." R. 26.

Plaintiff contends that the ALJ erred in not finding the opinion of Dr. Johnston persuasive because he examined Plaintiff and discovered atrophy and muscle weakness, which undermines the ALJ's decision that Dr. Johnston's opinion was unsupported by his treatment notes and failure to physically examine Plaintiff. ECF No. 18 at 12–13. The examination that Plaintiff relies on, however, took place on August 2, 2017, *before* Plaintiff's fusion surgery. R. 387. Again, Plaintiff's post-surgery treatment notes indicate a marked improvement in her neck pain. R. 305, 359, 360–63, 365–67, 375, 377, 568, 571.

In contrast, the ALJ found the opinion of Dr. Randal Reid, a State Agency reviewing physician, to be persuasive "as consistent with the evidence during the relevant time period." R. 25. After reviewing Plaintiff's medical history and treatment notes, Dr. Reid opined that Plaintiff was able to "occasionally lift and/or

15

carry 20 pounds and frequently lift and/or carry 10 pounds," "stand and/or walk (with normal breaks) for a total of 4 hours combined in an 8-hour workday," "sit (with normal breaks) for a total of about 6 hours in an 8-hour workday," and "occasionally perform all postural maneuvers." R. 25 (citing R. 89–91).[11]

The ALJ is entitled to significant deference in deciding the credibility of medical experts and the weight to be accorded their opinions. *See Scott*, 770 F.2d at 485. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Brown*, 192 F.3d at 496. The Court finds that Dr. Reid's opinion, in addition to Plaintiff's objective medical history, provides substantial evidence to support the ALJ's RFC determination.

### 4. *Substantial evidence supports Plaintiff's RFC.*

Plaintiff complains that the ALJ failed to consider her cervical limitations in formulating her RFC. ECF No. 18 at 12. To the contrary, the ALJ's decision reveals that the she extensively discussed Plaintiff's cervical issues, weighed the evidence related to those issues, and used her findings to formulate the RFC. The ALJ acknowledged that the record contained evidence that Plaintiff experienced pain in her neck but found that there was no objective evidence that she was more limited

---

[11] The ALJ also discounted the opinion of Dr. Lawrence Ligon, a State Agency reviewing physician. Dr. Ligon opined that there was insufficient evidence to determine Plaintiff's RFC. R. 25. The ALJ did not find this opinion persuasive because "the evidence substantiates the severe impairments and residual functional capacity detailed [in the ALJ's decision]." R. 25.

than the ALJ's assessed RFC.

In reaching her RFC determination, the ALJ weighed conflicting evidence regarding the severity of Plaintiff's cervical impairments—she did not disregard any such impairment completely. As noted above, Plaintiff and her husband testified that she has neck pain and issues with using her hands; in addition, Dr. Johnston opined that Plaintiff cannot look up or down and could only occasionally look to the side. R. 25; *see* R. 50–52, 58, 61–63, 1903. In contrast, Plaintiff's treatment notes, MRIs, x-rays, and examinations following her fusion surgery all noted a patent improvement in her cervical issues. R. 305, 359, 360–63, 365–67, 375, 377, 568, 571. The ALJ did not doubt Plaintiff suffered from cervical issues, just not to the degree to which Plaintiff complained. Based on the evidence, the ALJ concluded that Plaintiff's degenerative disc disease was controlled following surgery. R. 25. Thus, the ALJ appropriately identified, weighed, and resolved the conflicts in the record in assessing Plaintiff's RFC. *See White v. Kijakazi*, No. 4:21-CV-00400, 2022 WL 4473701, at *3 (S.D. Tex. Sept. 26, 2022).

Plaintiff's brief consists almost entirely of record cites that Plaintiff asks the Court to find more compelling than the ALJ did in her decision. *See* ECF No. 18 at 9–11.[12] In effect, Plaintiff asks this Court to reweigh the evidence, which controlling

---

[12] Furthermore, certain parts of Plaintiff's arguments rely on irrelevant portions of the record. For example, Plaintiff cites the record in support of her argument that she suffered from "multiple back impairments" and not just cervical degenerative disc disease, but that record refers to Plaintiff's

law precludes. *See White*, 2022 WL 4473701, at *3 ("Courts give considerable deference to the ALJ's decision, including when they analyze facts that underlie the ALJ's formulation of a claimant's RFC. A court may only reverse the decision of the ALJ if the ALJ's decision is not supported by substantial evidence.") (internal citations omitted).

Substantial evidence supports the ALJ's decision not to include any more limitations than what was included in the assessed RFC related to Plaintiff's neck movement. *See id.*[13]

## V. CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 18, is **DENIED**. It is further **ORDERED** that Commissioner's motion for summary judgment, ECF No. 19, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

---

condition beyond the relevant period. *See* ECF No. 18 at 11 (citing R. 1580) (Treatment Notes from November 1, 2019 examination, addressing the previous six months)).

[13] Plaintiff cites and quotes from *McMillan v. Saul*, No. CV H-18-0037, 2019 WL 4601862, at *1 (S.D. Tex. Sept. 20, 2019), in support of her argument that the ALJ erred in failing to include cervical limitations in the assessed RFC. ECF No. 18 at 13. Plaintiff argues that the court in *McMillian* found reversible error where the ALJ failed to include limitations of unrecognized severe impairments in the RFC determination. *Id.* Plaintiff compares the *McMillian* case to the instant case, asserting that in the unlikely event that the ALJ's Step Two finding that Plaintiff's "degenerative disc disease" was a severe impairment did not encompass Plaintiff's cervical impairments, then by not including any cervical limitations in the RFC determination, the ALJ reversibly erred. ECF No. 18 at 13–14. Based on the record as a whole, the ALJ's Step Two finding encompasses Plaintiff's cervical issues, even though the ALJ did not limit her finding to only *cervical* degenerative disc disease, and therefore, *McMillian* is inapplicable.

Signed at Houston, Texas, on August 16, 2023.

*Dena Palermo*
_____
**Dena Hanovice Palermo
United States Magistrate Judge**